Gabrielli, J. (dissenting).
The question presented is whether subdivision (3) of section 6-104 of the Uniform Commercial Code has obviated the rule established by case law in New York that the buyer of a going, business in a bulk sale transaction must make adequate inquiry concerning the seller ’s undisclosed creditors or be subject to the claims of those creditors. We conclude that such an inquiry is required to be made.
On January 9, 1970, L. D. J. Dress, Inc. sold its dress shop to one Warman who, in turn, sold it to defendant, Climax Boutique, Inc., as a going business in a bulk sales transaction. The seller gave the defendant buyer an affidavit that it had no creditors. Plaintiff in this action, however, had sold dresses to the seller L. D. J. for which there was a balance due. The affidavit of no creditors was supplied defendant at the closing. *217 Prior to that defendant’s attorney had made a lien search which disclosed nothing, was informally told by L, D. J.’s attorney that there were no creditors (even including the landlord and utilities), and inspected L. D. J.’s checkbook seeing that indeed checks had been written to certain of L. D. J.’s creditors. Defendant, through its attorney or otherwise, however, never attempted to review L. D. J.’s books; nor was the source of the merchandise included in the bulk sale ever questioned. The parties stipulated that the defendant had no knowledge of the plaintiff’s claim prior to the sale.
The Trial Judge held that the'affidavit of no creditors furnished by the seller was not such a list of creditors as was contemplated under the Bulk Sales Act (Uniform Commercial Code, art. 6) to save the defendant harmless from claims of the seller’s creditors; and that defendant failed to make the sort of thorough inquiry which the law required. As a consequence of these findings he enjoined the sale and ordered the appointment of a receiver unless the defendants should pay the plaintiff the amount due together with costs and disbursements. (On the appeal to the Appellate Division the action was discontinued as to defendant L. D. J.)
The Appellate Division majority reversed and dismissed the complaint. After first noting the case law in New York interpreting former section 44 of the Personal Property Law, to the effect that in addition to taking the required list of creditors from the seller, the buyer was under a duty to make careful inquiry as to the possible existence of creditors, the majority held such law to be inapplicable in light of new subdivision (3) of section 6-104 of the Uniform Commercial Code, which places responsibility on the seller for the accuracy of the list and preserves the effectiveness of the sale even though there might be errors or omissions in the list, unless the buyer be shown to have had the knowledge of the list’s accuracy. A literal interpretation of that section was said to obviate any duty on the buyer to make inquiry. Besides, said the majority, the inquiry that was made, i.e., the lien search, the conversation and the inspection of check stubs, would have satisfied the old rule in any event. The two dissenters could not agree that the old rule regarding inquiry had been overcome by the statute and noted that the defendant should have been put on notice the affidavit *218 of no creditors was false since it would be unlikely that á going business would have no outstanding debts.
Section. 6-104 provides generally that a bulk transfer is ineffective against any creditor of the seller unless the buyer requires the seller to furnish a list of his existing creditors. Sections 6-105 and 6-107 then confer upon the buyer the duty of notifying the seller’s creditors of the sale at least 10 days in advance of the sale. These provisions are as stated in the Official Comment following section 6-105 (McKinney’s Cons. Laws of N. Y., Book 62%, Uniform Commercial Code, p. 738) “ the heart of the Article,” the whole purpose of which is (pp. 716-717) “ to deal with two common forms of commercial fraud, namely:
“ (a) The merchant, owing debts, who sells out his stock in trade to a friend for less than it is worth, pays his creditors less than he owes them, and hopes to come back into the business through the back door some time in the future.
“ (b) The merchant, owing debts, who sells out his stock in trade to any one for any price, pockets the proceeds,, and disappears leaving his creditors unpaid.”
With these salutary aims in mind, how do we deal with subdivision (3) of section 6-104 which seems calculated, as applied by the court below in the instant case, to defeat the whole purpose and intent of article 6? Subdivision (3) states: “ Responsibility for the completeness and accuracy of the list of creditors rests on the transferor, and the transfer is not rendered ineffective by errors or omissions therein unless the transferee is shown to have had knowledge.” The inclusion of this subdivision may very likely have been due to legislative oversight. The purpose of article 6 is to safeguard creditors while at the same time providing for the smooth and relatively uninterrupted flow of the sale transaction (see Hogan, The Highways and Some of the Byways In the Sales and Bulk Sales Articles of the Uniform Commercial Code, 48 Cornell Law Quarterly 1, 37; Levit, Bulk Transfers — Stepchild of the Uniform Commercial Code, 46 Notre Dame Lawyer, 694, 706, 707). The model article 6 of the Uniform Commelrcial Code, in addition to carrying section 6-104 also carries section 6-106. As explained by former Dean William D. Hawkland (Remedies *219 of Bulk Transfer Creditors Where There Has Been Compliance With Article 6, 74 Commercial L. J. 257) prior to the drafting of the Uniform Commercial Code many States followed the New York law which did not require the buyer to apply consideration to the debts of the seller. The idea was that the seller’s creditors were adequately protected if they knew that he was about to realize funds as-the result of the bulk sale. This notice was sufficient to safeguard the creditors. Other States, however, followed the Pennsylvania law and provided that creditors were not adequately protected unless the buyer was obligated to apply the consideration for the sale to the debts of the seller. Thus, when the Uniform Commercial Code draftsmen came to article 6 they wrote in a section 6-106 adopting the Pennsylvania approach which, in effect, requires the buyer to wait 30 days before paying over the considerátion during which time claims of the seller’s creditors could be satisfied out of this fund. Section 6-106 was labeled “ optional ”. Nineteen jurisdictions have accepted section 6-106 and 31, including New York, have rejected it. In New York we consider the list and buyer’s notice adequate protection to the creditor as we did before the Uniform Commercial Code was adopted. But at that time we had no provision which saved the buyer harmless upon the seller’s furnishing a list. At that time the case law required the buyer to make thorough inquiry (Klein v. Schwartz, 128 N. Y. S. 2d 177; Willner Butter & Egg Corp. v. Roth, 192 Misc. 970; Heilmann v. Powelson, 101 Misc. 230). Thus, the creditor would have been adequately protected.
Hawkland notes á relationship between subdivision (3) of section 6-104 and section 6-106[1] and from this we can see that *220 where the statute covering bulk sales contains both subdivision (3) of section 6-104 and section 6-106, the consequences to a creditor omitted frojn the list would not be as onerous as they are in New York where there is no section 6-106. At least the odds are that prior to the expiration of the 30. days’ waiting period carried in section 6-106, a creditor would get wind df the sale and have time to lay claim to a portion of the proceeds. At the same time, the buyer would be spared the necessity of making the inquiry required under our case law. However, where, as in New York, there is no section 6-106, there should probably be no subdivision (3) of section 6-104 which acts to cut off the omitted creditor’s rights irrevocably as of the time of the closing as interpreted by the court below, a result in complete and total derogation of the aims of, article 6. As stated by yet another writer: “ If the purpose of article 6 is to give creditors who extend credit on the faith of a stock of merchandise advance notice so that they can take such steps as are necessary to protect themselves against a bulk transfer, the Code and pre-existing law simply afford no adequate protection in the absence of sectidn 6-106 ” (Barkin and Gilbert, Bulk Transfers In Florida — The Creditor Protected, 20 Univ. of Florida L. Rev. 158, 167). It appears, then, that without section 6-106, there is no salutary purpose to be served by the inclusion of subdivision (3) of section 6-104.
We are disposed to conclude that despite the inclusion of subdivision (3) of section 6-104 in the New York statute the pre-existing case law regarding the duty of the buyer to investigate the seller’s creditors persists. If such a case law rule is not superimposed on subdivision (3) the whole purpose of article 6 is subverted. Thus, responsibility for the accuracy of the list of creditors rests on the seller unless the buyer has actual knowledge which must be arrived at through reasonable investigation, i.e., at the very least an inspection of the seller’s *221 books together with a search for liens.[2] In other words, the part of subdivision (3) which preserves the creditors’ rights if the buyer has knowledge subsumes that the buyer has acted to acquire that knowledge. We are aided in this analysis by three factors. First, the New York Annotations state that subdivision (3) of section 6-104, although new to the statute, is “ but declaratory of the New York law,” citing those cases' which imposed the investigatory duty on the buyer.[3] Second, an absurdity would be formulated into legal doctrine were it to be held that, as in this case, a buyer would not actually know (even without investigating) that a going mercantile establishment would have to have at least some current creditors. Third, as before stated, a decision to allow the seller to have the final word as to whether or not there are any creditors and if there are, their identities, would frustrate the express purpose of the article. His responsibility extends to furnishing a list. The buyer must verify that list through his own investigation so as to give him a basis for the acquisition of actual knowledge.
We emphasize that adherence to the position and concept adopted by the majority will permit a buyer to be entirely free of any liability despite even his own reckless disregard of the natural consequences of his failure or refusal to make any inquiry of the liability status of the business being purchased — all to the damage and loss of innocent creditors of the seller. Such a concept -— permitting a buyer to completely ignore the realities of the business world and, further, to cavalierly brush aside any inquiry as to the status of the seller’s business debts — destroys one of the prime aims of article 6, to, wit, to safeguard creditors.
We would not rest our view for reversal, as we might, on the ground that an affidavit of no creditors is not a list contemplated under section 6-104. (See the Commentary of Donald J. Bap-son, McKinney’s Cons. Laws of N. Y., Book 62%, Uniform Commercial Code, § 6-101, p. 711.) To do this would be to post *222 pone the inevitable question of the construction to be given subdivision (3) of section 6-104 when a list is furnished which turns out to be incomplete. The proper ruling is and should be that either where a list is furnished, or where an affidavit of no creditors is furnished, the buyer must investigate, and that a reckless disregard of what might be uncovered by an investigation is tantamount to knowledge within the meaning of the statute. This is not a substitute of constructive knowledge for actual knowledge, but a recognition that willfull or reckless avoidance of knowledge should be and is the equivalent of knowledge.
The order of the Appellate Division should be reversed and the judgment of the trial court reinstated.
Judges Jones, Wachtler and Stevens concur with Judge Jasen ; Judge Gabrielli dissents and votes to reverse in a separate opinion in which Chief Judge Breitel concurs; Judge Rabin taking no part.
Order affirmed.

. “ Although creditors, by and large, have applauded section 6-106, its enactment has caused difficulties for transferees because it imposes on them the enormous responsibility of correctly applying the proceeds. * " * Although optional section 6-106 (4) resolves a major difficulty in the administration of - the application of proceeds rule, two troublesome problems remain. One involves the relationship between section 6-104 (3) and section 6-106. Under section 6-104 (3) a transferee may rely on the accuracy of the list of creditors given by the transferor unless he has knowledge that this list is inaccurate. On the other hand, section 6-106 apparently gives protection to creditors who file their claims within thirty days after the notice of transfer is mailed. These two provisions come into play where the transferor delivers to the transferee an affidavit of ‘no creditors’. In that case, assuming the transferee has no knowledge of *220 any creditor of the transferor, may the transferee safely pay the new consideration to the transferor, or must he wait thirty days to see if any creditors file! ‘ The prudent answer seems clear enough. He must wait thirty days. This answer makes section 6-106 impopular with transferors who are forced to wait thirty days after the transaction is closed to get their money ’ [citing himself] A Transactional Guide to the Uniform Commercial Code, 855-6 [1964].” (74 Commercial L. J. 257, 262).

. The cheeking for liens and an inspection of checks "written by the seller in this case did not amount to an adequate investigation.

. Klein v. Schwartz, 128 N. Y. S. 2d 177; Carl Ahlers, Inc. v. Dingott, 173 Misc. 873; Marcus v. Knitzer, 168 Misc. 9; Willner Butter & Egg Corp. v. Roth, 192 Misc. 970. (McKinney’s Cons. Laws of N. Y., Book 62%, Uniform Commercial Code, § 6-104, p. 735.)